IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DENNIS NOLAND,**

    **Petitioner,**

    v.                               **CASE NO. 2:05-cv-682**
                                         **JUDGE MARBLEY**
**PAT HURLEY, Warden,**                **MAGISTRATE JUDGE ABEL**

    **Respondent.**

## ORDER and
## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the instant petition, respondent's return of writ, petitioner's traverse, and the exhibits of the parties.

On March 6, 2006, petitioner filed a request to expand the record, which motion is **GRANTED**, in which he asserts that his constitutional rights have been violated because prison officials forcibly cut his hair and beard in violation of his religious beliefs. *See* Doc. No. 7. There is no allegation that petitioner was assessed bad time. Habeas corpus is available only to challenge the constitutionality of a prisoner's custody. "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *Kirby v. Dutton*, 794 F.2d 245 (6th Cir. 1986). Claims alleging other constitutional violations are properly brought in a civil rights action under 42 U.S.C. § 1983.

This case involves petitioner's February 26, 2002, guilty plea in the Washington County Court of Common Pleas to rape. Petitioner's conviction was affirmed on appeal, but on August 27, 2003, the Ohio Supreme Court remanded petitioner's case to the trial court for resentencing. In this

federal habeas corpus petition, petitioner asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004), and that his classification as a sexual predator is unconstitutional.

For the reasons that follow, the Magistrate Judge concludes that claim two fails to present an issue appropriate for federal habeas corpus review, and that unexhausted state court remedies surround his *Blakely* claim. The Magistrate Judge therefore **RECOMMENDS** that this action be **STAYED** pending petitioner's exhaustion of state court remedies.

## I.  FACTS

This case involves the following facts, as summarized by the Fourth District Court of Appeals:

> In November 1997, Tamara Noland discovered that her daughter, Polli Metcalf, was pregnant. Ms. Metcalf, who was twenty-two years old at the time, has the mental capacity of a three and a half year old child. Ms. Metcalf had an abortion and tissue from the fetus was preserved for investigative purposes. After learning her daughter was pregnant, Mrs. Noland contacted the Washington County Sheriff's Office to report that her daughter had been sexually abused. For two years, Detective Schuck attempted to identify the person who had sexually abused Ms. Metcalf. Eventually, Detective Schuck identified Noland, Ms. Metcalf's stepfather, as a suspect based on a call he received from Ms. Metcalf's caregiver. The caregiver indicated that she and Ms. Metcalf were at a movie that contained a passionate scene. The caregiver asked Ms. Metcalf if anybody had ever embraced her or kissed her like that, to which Ms. Metcalf replied "Dad." When the caregiver asked who "Dad" was, Ms. Metcalf identified Noland. Based on that information, Detective Schuck obtained a search warrant for a sample of Noland's DNA. Detective Schuck sent Noland's DNA sample to the laboratory so that it could be compared with the DNA from the fetal tissue. The results indicated that Noland fathered Ms. Metcalf's child. Detective Schuck then interviewed Noland. Initially, Noland denied having sexual intercourse with Ms. Metcalf. Later, he admitted that he had sexual intercourse with Ms. Metcalf on one occasion but stated that he did not mean to impregnate her.
>
> In August 2000, the state charged Noland with one count of rape in

> violation of R.C. 2907.02(A)(1)(c). Although Noland initially pled not guilty, he later changed his plea to guilty. The judge then set the matter for a combined sentencing and sexual predator classification hearing. On the eve of sentencing, Noland filed a motion to withdraw his guilty plea. After holding a hearing on Noland's motion, the judge denied Noland's motion to withdraw his plea. The judge then proceeded to sentence Noland to ten years in prison, the maximum sentence allowed. He also designated Noland a sexual predator.

Exhibit J to Return of Writ.

## II.  PROCEDURAL HISTORY

Petitioner was indicted by the 2000 term of the Washington County grand jury on rape, in violation of O.R.C. 2907.02(A).  Exhibit A to Return of Writ.  On February 26, 2002, while represented by counsel, petitioner pleaded guilty to the charge.  Exhibit B to Return of Writ.  Petitioner thereafter filed a motion to withdraw his guilty plea.  He asserted:

> 1. The trial judge had presided over petitioner's divorce and domestic violence cases, and therefore was biased against petitioner and should have recused himself.
>
> 2.  Noland did not understand the nature of his plea or its ramifications.
>
> 3.  Noland's guilty plea was not voluntary.

Exhibit C to Return of Writ.  After a hearing, the trial court denied petitioner's motion.  Exhibit D to Return of Writ.  On April 26, 2002, petitioner was sentenced to ten years plus five years post release control and was adjudicated a sexual predator.  Exhibit E to Return of Writ.  Represented by counsel, petitioner filed a timely appeal.  He asserted the following assignments of error:

> 1. The trial court erred, in violation of Crim.R. 32.1, when it denied his guilty plea thereby denying him due process and the right to a jury trial as guaranteed by the Fifth, Sixth, and Fourteenth

> Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.
>
> 2. Thee trial court erred in sentencing Dennis Noland to a maximum prison term thereby denying him due process as required by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution.
>
> 3. Dennis Noland's due process rights were violated when the court labeled him a sexual predator, in the absence of clear and convincing evidence to support that label. Fourteenth Amendment, United States Constitution; Section 16, Article I, Ohio Constitution; R.C. 2950.09(B)(3).
>
> 4. Dennis Noland was denied his constitutional right to effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution when his attorney failed to object to the trial court's improper sentence and improper sexual predator label.

*See* Exhibit J to Return of Writ. On March 12, 2003, the appellate court affirmed the judgment of the trial court. *Id.* Still represented by counsel, petitioner filed a motion to certify conflict on the following issue:

> When a trial court sentences an individual to non-minimum, consecutive or maximum sentences, must the trial court make the requisite findings from the bench at the sentencing hearing or is it sufficient to make the findings for the first time in the sentencing entry? R.C. 2929.13(B); R.C. 2929.14(B); R.C. 2929.19(B).

Exhibit K to Return of Writ. The appellate court granted petitioner's motion. Exhibit L to Return of Writ. Again represented by counsel, petitioner filed a notice of certification of conflict with the Ohio Supreme Court, in which he raised the same issue. Exhibit M to Return of Writ. Petitioner also filed an appeal of the appellate court's decision, in which he raised the following proposition of law:

> Before a trial court sentences an individual to a maximum sentence, the trial court must set forth its findings and reasons from the bench

4

at the sentencing hearing.

Exhibit N to Return of Writ. Petitioner's cases were consolidated and held for decision in *State v. Comer*. *See* Exhibit O to Return of Writ. On August 27, 2003, the Supreme Court reversed the appellate court's judgment, and remanded the case for re-sentencing under *State v. Comer*, 99 Ohio St.3d 463. Exhibit P to Return of Writ. After a January 22, 2004, hearing, the trial court re-sentenced petitioner in a February 6, 2004, entry to ten years plus five years post release control. Exhibit S to Return of Writ. Represented by new counsel, petitioner again filed an appeal of his sentence to the Fourth District Court of Appeals. He asserted the following assignment of error:

> The trial court erred when it imposed a maximum sentence without stating adequate reasons during the resentencing hearing to support the finding that this offense constituted the worst form of the offense.

Exhibit T to Return of Writ. In an entry dated May 21, 2004, the state appellate court indicates that, on May 4, 2004, appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), to withdraw, that identified the same foregoing potential claim. Exhibit U to Return of Writ. Petitioner filed a *pro se* supplemental brief, in which he raised various claims of ineffective assistance of trial counsel. Exhibit V to Return of Writ. On November 5, 2004, the appellate court affirmed the judgment of the trial court. Exhibit X to Return of Writ. Proceeding *pro se*, petitioner filed a timely appeal to the Ohio Supreme Court, in which he asserted that his sentence violated *Blakely v. Washington*, 542 U.S. 296 (2004). Exhibit Y to Return of Writ. On March 23, 2005, the Ohio Supreme Court denied leave to appeal and dismissed the appeal as not involving any substantial constitutional question. Exhibit Z to Return of Writ.

On July 13, 2005, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He alleges that he is in the custody of the respondent in violation of

the Constitution of the United States based upon the following grounds:

> 1. Petitioner was given the maximum sentence in violation of law and constitutions.
>
> Ground one involves the right to petitioner to constitutional fundamental right to equal protection [sic], free from cruel and unusual punishment, and due process, in violation of Article I, Sections 10 and 16 of the Ohio Constitution, and in violation of Amendments 5, 6, and 14 of the United States Constitution, when the Ohio Court of Appeals twice affirmed the decision of the trial court, and the Ohio Supreme Court declined jurisdiction to hear as not involving any substantial constitutional question, where the trial court abused its discretion and rendered its ruling from misinformation, hearsay within hearsay testimony that petitioner was forbidden to question face to face, combined with vindictive letters and statements from ex-wife, and sentenced petitioner to the maximum sentence contrary to the decision in *Blakely v. Washington*, 124 S.Ct. 2531 (2004).
>
> 2. Petitioner was deprived of his due process rights when the trial court abused its discretion by classifying petitioner as a sexual predator.
>
> Petitioner's due process rights guaranteed under the 14th Amendment to the United States Constitution were violated when the trial court erred in adjudicating petitioner as a sexual predatory on hearsay with hearsay without giving proper notice and without a separate proper hearing denying petitioner the opportunity to present a defense on his behalf.

It is the position of the respondent that claim two is not cognizable in federal habeas corpus review, and that both claims are procedurally defaulted.

### III.  CLAIM TWO

In claim two, petitioner asserts that he was denied due process and the right to present a defense when the trial court adjudicated him as a sexual predator.  The United States Court of Appeals for the Sixth Circuit has held that such claim fails to present an issue appropriate for federal habeas corpus review.

6

A federal court has jurisdiction to consider a petition for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground that *he is in custody in violation of the Constitution or laws or treaties of the United States.*" 28 U.S.C. § 2254 (emphasis added)....

Although the Supreme Court has not interpreted 28 U.S.C. § 2254 as requiring "that a prisoner be physically confined in order to challenge his sentence on habeas corpus," *Maleng v. Cook,* 490 U.S. 488, 491, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989), "[t]he custody requirement of the habeas corpus statute is designed to preserve the writ of habeas corpus as a remedy for severe restraints on individual liberty." *Hensley v. Municipal Court,* 411 U.S. 345, 351, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973) (holding that a petitioner who had been released on his own recognizance pending the execution of sentence was "in custody" for the purposes of federal habeas corpus). As a result, "its use has been limited to cases of special urgency, leaving more conventional remedies for cases in which the restraints on liberty are neither severe nor immediate." *Id.*

\*\*\*

Although [petitioner] is currently incarcerated, he is not seeking relief from the conviction or sentence upon which his confinement is based. He claims instead that, as it applies to him, Ohio's sexual-predator statute is unconstitutional....

The Ninth Circuit... has addressed this very question with regard to similar sexual-predator statutes, and has concluded that petitioners who have completed their prison sentences but who are required to register as sex offenders do not satisfy the "in custody" requirement of 28 U.S.C. § 2254. *McNab v. Kok,* 170 F.3d 1246, 1247 (9th Cir.1999) (dismissing a habeas petition after concluding that Oregon's sex-offender statute does not place an offender "in custody" for purposes of 28 U.S.C. § 2254); *Henry v. Lungren,* 164 F.3d 1240, 1241-42 (9th Cir.1999) (same conclusion for California statute); *Williamson v. Gregoire,* 151 F.3d 1180, 1184 (9th Cir.1998) (same conclusion for Washington statute). Instead, the court has held that the classification, registration, and notification requirements are "more properly characterized as a collateral consequence of conviction rather than as a restraint on liberty." *Williamson,* 151 F.3d at 1183.

The Ninth Circuit has noted that the federal court "precedents that have found a restraint on liberty rely heavily on the notion of a physical sense of liberty--that is, whether the legal disability in question somehow limits the putative habeas petitioner's movement." *Williamson,* 151 F.3d at 1183. For example, the Supreme Court has held that a paroled prisoner is still 'in custody' for purposes of federal habeas corpus because "the petitioner's release from physical confinement ... [i]s explicitly conditioned on his reporting regularly to his parole officer, remaining in a particular community, residence, and job, and refraining from certain activities." *Maleng,* 490 U.S. at 491, 109 S.Ct. 1923 (citing *Jones v. Cunningham,* 371 U.S. 236, 242, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963)).

The Ohio sexual-predator statute places no such constraints on [petitioner's] movement. Like the Washington sexual-predator statute discussed in *Williamson,* the Ohio statute applies to [petitioner] "whether he stays in the same place or whether he moves," *Williamson,* 151 F.3d at 1184, and he must verify his address with the sheriff every 90 days even if he never leaves his house. [Petitioner's] ability to move to a different community or residence is therefore not conditioned on approval by a government official. Similarly, [petitioner's] continued freedom is not conditioned on his ability to remain employed, nor is he prohibited from engaging in any legal activities.

The Ohio Supreme Court has also held that the sexual-predator statute is remedial as opposed to punitive in nature. *State v. Cook,* 83 Ohio St.3d 404, 700 N.E.2d 570, 585 (Ohio 1998) (holding that the Ohio sexual-predator statute "serves the *523 solely remedial purpose of protecting the public" and that "there is no clear proof that [the statute] is punitive in its effect"). Although "the 'in custody' requirement may be satisfied by restraints other than criminal punishment," *Williamson,* 151 F.3d at 1184, the Ohio Supreme Court's conclusion that the sexual-predator statute is a form of civil regulation provides additional support for our conclusion that the classification, registration, and community notification provisions are more analogous to collateral consequences such as the loss of the right to vote than to severe restraints on freedom of movement such as parole. *Compare Carafas v. LaVallee,* 391 U.S. 234, 237 & n. 6, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968) (referring to the loss of the right to vote and the ability to serve as a juror as "collateral consequences" of a conviction) *with Jones,* 371 U.S. at 241-42, 83

>S.Ct. 373 (holding that a prisoner released on parole from immediate physical confinement was nonetheless sufficiently restrained in his freedom of movement as to be "in custody" for the purposes of federal habeas corpus). We therefore conclude that [the] petition for a writ of habeas corpus was properly denied.

*Leslie v. Randle,* 296 F.3d 518, 522-23 (6th Cir. 2002).

### III.  CLAIM ONE

In claim one, petitioner asserts that his sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004). Respondent contends that this claim is procedurally defaulted because petitioner failed to raise such claim in the state appellate court. *Return of Writ,* at 13-14.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. §2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id*.; *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). But if, because of a procedural default, the petitioner can no longer present his claims to the state courts, then he has also waived those claims for purposes of federal habeas corpus review, unless he can demonstrate both cause for the procedural default, as well as actual prejudice from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin*

9

*v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must decide that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at

Petitioner was re-sentenced in January 2004, in a February 6, 2004, journal entry, and prior to the United States Supreme Court's June 24, 2004, decision in *Blakely, supra*. His attorney filed the appellate brief and request to withdraw as appellate counsel under *Anders, supra*, in May 2004, again prior to Blakely. Additionally, the record appears to indicate[1] that petitioner filed his *pro se* brief raising supplemental assignments of error on June 24, 2004, the same day that *Blakely* was decided. *See* Exhibit V to Return of Writ. On November 5, 2004, the state appellate court affirmed petitioner's sentence. Exhibit X to Return of Writ.

Assuming, therefore, that appellate counsel could have amended his appellate brief to raise a *Blakely* claim between June 24, 2004, when *Blakely* was issued, and November 5, 2005, when the appellate court dismissed petitioner's appeal, and assuming further, that petitioner's *Blakely* claim therefore may be procedurally defaulted, petitioner may assert as cause for his procedural default

---

[1] The date that petitioner's *pro se* supplemental brief was filed is difficult to decipher.

the ineffective assistance of appellate counsel. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986). However, such claim must have been presented to the state courts, and cannot itself be procedurally defaulted. *Id.,* at 452-453.

The record reflects that petitioner's ineffective assistance of counsel claim is unexhausted. Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. §2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999). But where alternative state remedies are available to consider the same claim, exhaustion of one of these remedies is all that is necessary. *Keener v. Ridenour*, 594 F.2d 581, 584 (6th Cir. 1979). A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he seeks to present for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987).

Petitioner has never filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B), which provides in relevant part:

> (1) A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.
>
> (2) An application for reopening shall contain all of the following:

11

>(a) The appellate case number in which reopening is sought and the trial court case number or numbers from which the appeal was taken;
>
>(b) A showing of good cause for untimely filing if the application is filed more than ninety days after journalization of the appellate judgment.
>
>(c) One or more assignments of error or arguments in support of assignments of error that previously were not considered on the merits in the case by any appellate court or that were considered on an incomplete record because of appellate counsel's deficient representation;
>
>(d) A sworn statement of the basis for the claim that appellate counsel's representation was deficient with respect to the assignments of error or arguments raised pursuant to division (B)(2)(c) of this rule and the manner in which the deficiency prejudicially affected the outcome of the appeal, which may include citations to applicable authorities and references to the record;
>
>(e) Any parts of the record available to the applicant and all supplemental affidavits upon which the applicant relies.

Although the time period for filing a timely 26(B) application has now expired, petitioner still may file a delayed application to reopen his appeal. *See id.*

The Court must therefore consider whether a stay of proceedings of appropriate. *See In re Bowan,* 436 F.3d 699, 703 (6th Cir. 2006), citing *Palmer v. Carlton,* 276 F.3d 777, 781 (6th Cir. 2002). The United States Supreme Court has held:

>Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. *Cf. Duncan, supra,* at 180, 121 S.Ct. 2120 ("[D]iminution of statutory incentives to proceed first in state court would ... increase the risk of the very piecemeal litigation that the exhaustion requirement is designed to reduce").

For these reasons, stay and abeyance should be available only in limited circumstances. Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court. Moreover, even if a petitioner had good cause for that failure, the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless. Cf. 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").

Even where stay and abeyance is appropriate, the district court's discretion in structuring the stay is limited by the timeliness concerns reflected in AEDPA. A mixed petition should not be stayed indefinitely. Though, generally, a prisoner's "principal interest ... is in obtaining speedy federal relief on his claims," *Lundy, supra,* at 520, 102 S.Ct. 1198 (plurality opinion), not all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. Without time limits, petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review. Thus, district courts should place reasonable time limits on a petitioner's trip to state court and back. *See, e.g., Zarvela,* 254 F.3d, at 381 ("[District courts] should explicitly condition the stay on the prisoner's pursuing state court remedies within a brief interval, normally 30 days, after the stay is entered and returning to federal court within a similarly brief interval, normally 30 days after state court exhaustion is completed"). And if a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay at all. *See id.,* at 380-381.

On the other hand, it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. *See Lundy,* 455 U.S., at 522, 102 S.Ct. 1198 (the total exhaustion requirement was not intended to "unreasonably impair the prisoner's right to relief"). In such a case, the petitioner's interest in

13

> obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions.

*Rhines v. Weber*, 125 S.Ct. 1528, 1534-36 (2005). In *Pace v. DiGuglielmo,* 125 S.Ct. 1807, 1813 (2005), the Supreme Court stated that

> A petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.

As of yet, there is little guidance as to what constitutes good cause for failing to exhaust state court remedies.

> Various courts have adopted the standard for cause applicable to procedural defaults which requires that some "objective factor external to the defense" made it impossible to bring the claim earlier in the state court proceedings as required by *Coleman v. Thompson,* 501 U.S. 722, 755, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). *See e.g., Fernandez v. Artuz* 2006 WL 121943, *5 (S.D.N.Y., January 18, 2006); *Pierce v. Hurley,* 2006 WL 143717, *8 (S.D.Ohio, January 18, 2006); *Carter v. Friel,* 2006 WL 208872, *3 (D.Utah, January 6, 2006); *Hernandez v. Sullivan,* 397 F.Supp.2d 1205, 1207 (C.D.Cal., 2005). Others, such as *Jackson v. Roe,* 425 F.3d 654 (9th Cir.2005), and the remanded *Rhines v. Weber,* 2005 WL 3466015, *2-3 (D.S.D., December 19, 2005), conclude that the cause standard of *Rhines* requires a lesser showing than that for procedural default.
>
> In *Jackson v. Roe,* the Ninth Circuit Court of Appeals concluded that good cause did not require a showing of "extraordinary circumstances." The Court said
>
> [W]e hold that the application of an "extraordinary circumstances" standard does not comport with the "good cause" standard prescribed by *Rhines. See NLRB v. Zeno Table Co.,* 610 F.2d 567, 569 (9th Cir.1979) (distinguishing between the "good cause" standard found in NLRB regulations and the "extraordinary circumstances" standard in section 10(e) of the National Labor Relations Act and noting that " 'good cause' ... appears to be less stringent than ... 'extraordinary circumstances' ").

14

*Jackson,* 425 F.3d at 661-62.

Thus, it would appear that good cause under *Rhines,* at least in [the Ninth] Circuit, should not be so strict a standard as to require a showing of some extreme and unusual event beyond the control of the defendant. This is supported by the Supreme Court's observation in *Pace v. DiGuglielmo,* --- U.S. ----, ---- - ----, 125 S.Ct. 1807, 1813-14, 161 L.Ed.2d 669 (2005), wherein the Court declared that a petitioner's confusion over whether or not his petition would be timely filed was "good cause" for the petitioner to file his unexhausted petition in the federal court.

Another court to discuss the standard of good cause under *Rhines* was the Eastern District of Pennsylvania. That court concluded that the good cause standard falls somewhere between the "lower threshold of unfairness," and the "higher standard of extraordinary circumstances, necessary for equitable tolling in capital cases." *See Baker v. Horn,* 383 F.Supp.2d 720, 747 (E.D.Pa.2005). This discussion of *Rhines,* while in the context of equitable tolling of a federal challenge in a capital case, examined whether the court should previously have granted a stay of the petition considering the petitioner's particular circumstances and the shifting state of the law in Pennsylvania at the time the original petitioner was filed.

The federal district courts have also developed a split of authority on whether ineffective assistance of post-conviction counsel qualifies as good cause to permit a stay of the federal proceedings. At least five district courts found that alleged ineffective assistance of counsel during post-conviction proceedings did constitute good cause for failure to exhaust claims in state proceedings, most without much discussion of the matter. *See e.g., Rhines v. Weber,* 2005 WL 3466015, *2-3 (D.S.D., December 19, 2005); *Ramchair v. Conway,* 2005 WL 2786975 at *16 (E.D.N.Y., October 26, 2005); *Boyd v. Jones,* 2005 WL 2656639 at *4 (E.D.Mich., October 14, 2005); *Fradiue v. Pliler,* 2005 WL 2204862 at *2 (E.D.Cal., September 8, 2005); and *Martin v. Warren,* 2005 WL 2173365 at *2 (E.D.Mich., September 2, 2005). Similarly at least three district courts found that alleged ineffective assistance of counsel during post-conviction proceedings did not constitute good cause. *See, e.g., Carter v. Friel,* 2006 WL 208872, *3 (D.Utah, January 6, 2006); *Vasquez v. Parrott,* 397 F.Supp.2d 452, 464 (S.D.N.Y., 2005); *Hubbert v. Renico,* 2005 WL 2173612 at *3 (E.D.Mich., September 7, 2005).

> Thus, the split of authority is broad and varied. However, the discussions by the Pennsylvania court in *Baker* and the Ninth Circuit in *Jackson* support... [the] conclusion that the good cause standard applicable in consideration of a request for stay and abeyance of a federal habeas petition requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of counsel either in contravention of the petitioner's clearly expressed desire to raise the claim or when petitioner had no knowledge of the claim's existence.

*Riner v. Crawford,* – F.Supp.2d –, 2006 WL 456774 (D.Nevada, February 3, 2006).  Arguably, therefore, petitioner may establish good cause for his failure to exhaust his claim of ineffective assistance of appellate counsel here.  Further, in view of the Ohio Supreme Court's recent decision in *State v. Foster*, – Ohio St.3d –, 2006 WL 509549 (Ohio February 27, 2006), wherein the Ohio Supreme Court held that Ohio's sentencing statutes violated *Blakely,* excising the unconstitutional provisions of Ohio's sentencing statutes, and holding that cases "pending on direct review must be remanded to trial courts for new sentencing hearings," *see id.*, petitioner's claim appears potentially meritorious.  Further, there is no indication that petitioner is engaging in dilatory tactics.  *See Rhines v. Weber, supra*.

For all of the foregoing reasons, the Magistrate Judge **RECOMMENDS** that claim two be **DISMISSED,** and that further proceedings in this action be **STAYED** so that petitioner may file a delayed 26(B) application in the state appellate court.  The Magistrate Judge further **RECOMMENDS** that petitioner be directed to initiate state court action within thirty (30) days, and notify federal court within thirty (30) days of completion of state court remedies as to his claim of ineffective assistance of appellate counsel.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days

of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

s/Mark R. Abel<br>
United States Magistrate Judge